IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROGER E. PINCHOT and CRYSTAL J.
PINCHOT,

        Plaintiffs,

v.

BANK OF AMERICA, N.A., as successor
by merger to BAC HOME LOANS
SERVICING, L.P.,

        Defendant.

Case No.: 12-cv-12994

Honorable Patrick J. Duggan

---

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

This action, brought against Defendant Bank of America, National Association,

("BANA") as successor by merger to BAC Home Loans Servicing, L.P., arises out of a

residential mortgage foreclosure.  Plaintiffs Roger and Crystal Pinchot seek damages as

well as various forms of declaratory and injunctive relief for a purportedly unlawful

foreclosure in addition to other legal transgressions.  It is undisputed that Plaintiffs

defaulted under the terms of the loan agreement, that the foreclosure by advertisement is

complete, and that the redemption period expired without Plaintiffs availing themselves

of the right to redeem or without having converted the foreclosure by advertisement into

a foreclosure conducted with judicial oversight.  Plaintiffs filed the instant action in the

state courts approximately one week after the expiration of the redemption period.

Presently before the Court is Defendant's Motion to Dismiss filed pursuant to Federal

Rule of Civil Procedure 12(b)(6).  Defendant argues that Plaintiffs lack standing to assert

their claims and have failed to sufficiently plead their case.  After reviewing the pertinent
pleadings and listening to the arguments of counsel at the December 13, 2012 hearing,
the Court is prepared to issue a ruling.  For the reasons stated herein, the Court grants
Defendant's Motions to Dismiss and dismisses Plaintiffs' Complaint with prejudice.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

On March 2, 2004, Plaintiffs accepted a $445,000 loan from First Franklin
Financial Corporation ("First Franklin") and, in exchange, executed a promissory note
secured by a mortgage on property located at 8195 Beacon Lane, Northville, Michigan
48168 (the "Property").  (Compl. ¶ 1; Mortgage, Compl. Ex. 3; Note, Defs.' Br. in Supp.
Ex. 2.)  The Mortgage was recorded with the Washtenaw County Register of Deeds on
March 18, 2004.  (Mortgage, Compl. Ex., 3.)  On May 1, 2008, First Franklin assigned
the mortgage to LaSalle Bank National Association ("LaSalle") as Trustee for Merrill
Lynch Mortgage Investors Trust 2006-FF1.  (Assignment, Def.'s Br. in Supp. Ex. 3.)
This assignment was recorded on June 17, 2008.  (*Id.*)

Due to "delinquencies on Plaintiff[s'] loan[,]" LaSalle initiated foreclosure
proceedings and the Property was sold at a Sheriff's sale on October 2, 2008.  (Compl. ¶
8.)  Plaintiffs subsequently redeemed the Property and entered into a loan modification
agreement with LaSalle in early 2009.  (*Id.* ¶¶ 9-10.)

However, "[d]espite redemption and subsequent loan modification, the subject
property was classified as 'non-homestead' due to the fact that the sheriff's sale was not
rescinded."  (*Id.* ¶ 11.)  It is worth noting that despite alleging that "the sheriff's sale was
never rescinded," (*id.* ¶ 9) Plaintiffs now concede that this is not true, (Plaintiffs' Brief in

2

Response 10).[1]  This concession appears motivated by Defendant's submission of an affidavit, recorded on November 3, 3008, expunging the 2008 Sheriffs' Deed.  (Affidavit, Def.'s Br. in Supp. Ex. 4.)  Deprived of their initial argument that the Sheriff's sale was not rescinded, Plaintiffs now assert that "the lawyer for the servicer did not properly report the expungement . . . so that the property became incorrectly classified as 'non-homestead'."[2]  (Pls.' Br. in Resp. 14.)  Whatever the reason for the allegedly erroneous classification, the non-homestead designation caused Plaintiffs' property tax to jump to $8,023.51 for 2010, a notable increase given that "up to and including 2009, Plaintiffs paid property taxes of approximately $4,600."  (Compl. ¶¶ 12-13.)

In early October 2010, Plaintiffs learned that Defendant would begin servicing their loan.  (*Id.* ¶ 16.)  Plaintiffs attempted to remit their mortgage payments but "[BANA] would not accept payment and returned Plaintiffs' checks due to 'insufficient funds' (i.e.[,] the payment was less than the alleged amount owed)."  (*Id.* ¶ 17.)  In February 2011, Defendant offered Plaintiffs a loan modification but Plaintiffs, who had been attempting to straighten out the non-homestead property designation with Defendant, refused because they wanted the issue corrected beforehand.  (*Id.* ¶ 18.)

Plaintiffs attempted to contact Defendant on numerous occasions in effort to have the property classification corrected, to get the excess tax payments refunded, and to

---

[1] Somewhat surprisingly, two pages after making this concession, Plaintiffs assert that the existence of "an irregularity" is evidenced by the "fact that the initial foreclosure in 2008 was never rescinded."  (Pls.' Br. in Resp. 12.)

[2] It is not entirely clear why Plaintiffs believe this is so as Michigan law provides "[w]hen a county register of deeds records a transfer of ownership of property, he or she shall notify the local tax collecting unit in which the property is located of the transfer."  Mich. Comp. Laws § 211.7cc(17) (section of tax code pertaining to homestead exemptions).

request that Defendant conduct an accounting.  (*Id.* ¶¶ 18, 20.)  In response to Plaintiffs'

inquiries, Defendant indicated that the account was being updated, that loan modification

documents were being prepared, or that additional time was needed to produce the

information Plaintiffs wanted.  (*Id.* ¶¶ 19, 21-24, 27.)  Although Defendant allegedly

assured Plaintiffs that they should not worry about foreclosure, Plaintiffs received a letter

on May 6, 2011 indicating that Defendant had accelerated the loan and that the total

indebtedness was $488,060.30.  (*Id.*  ¶¶ 24, 26, 51.)  Then, on or about June 9, 2011,

"without notice to Plaintiffs, Plaintiffs' property was sold at a sheriff's sale."  (*Id.* ¶ 28.)

This allegation, however, is not supported by Plaintiffs' own exhibits.  The Sheriff's

Deed, executed in favor of non-party U.S. Bank, shows that the foreclosure sale took

place on December 1, 2011.  (Sheriff's Deed, Compl. Ex. 2.)

Pursuant to Michigan law, the statutory redemption period expired on June 1,

2012.  Mich. Comp. Laws § 600.3240(8).  Plaintiffs did not redeem the Property nor

allege an intention to do so.  On June 7, 2012, Plaintiffs filed the instant action in Wayne

County Circuit Court.[3]  (Compl.)  Defendant removed the case to this Court on July 9,

2012, on the grounds of diversity jurisdiction.  28 U.S.C. §§ 1332, 1441, 1446.

Plaintiffs' Complaint alleges eight counts: (1) "Count I - Violation of M[ichigan]

C[ompiled] L[aws] § 600.3205a"; (2) "Count II - Violation of M[ichigan] C[ompiled]

---

[3] Defendant points out that "[b]ecause the property is located in Washtenaw County, the filing in Wayne County appears to have been in error.  That error, however, does not deprive this court of jurisdiction because Washtenaw and Wayne Counties are both in the Eastern District of Michigan. *See* 28 U.S.C. § 1441(f)."  (Def.'s Br. in Supp. 3 n.3.)  Defendant failed to raise this error in petitioning for removal and the Court therefore notes that Defendant's footnote is purely academic.

L[aws] § 600.3204(4)"; (3) "Count III - Negligence"; (4) "Count [IV][4]

Fraud/Misrepresentation"; (5) "Count [V] - Deceptive Act and/or Unfair Practice"; (6)

"Count V[I] – [Real Estate Settlement Procedures Act ("RESPA")] 12 U.S.C. § 2601 *et*

*seq.*"; (7) "Count VI[I] - Quiet Title"; and (8) "Count VII[I] - Equitable, Declaratory, and

Injunctive Relief".  Presently before the Court is Defendant's Motion to Dismiss filed

pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defendant asserts that Plaintiffs

lack standing to challenge the foreclosure and argues that Plaintiffs have failed to state a

claim upon which relief can be granted with respect to the other counts.

## II.    STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) allows

the Court to make an assessment as to whether a plaintiff's pleadings have stated a claim

upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  Under the Supreme Court's

articulation of the Rule 12(b)(6) standard in *Bell Atlantic Corporation v. Twombly*, 550

U.S. 544, 555-56, 570, 127 S. Ct. 1955, 1964-65, 1974 (2007), the Court must construe

the complaint in favor of the plaintiff and determine whether plaintiff's factual allegations

present claims plausible on their face.  This standard requires a claimant to put forth

"enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of"

the requisite elements of their claims.  *Id.* 550 U.S. at 557, 127 S. Ct. at 1965.  Even

though the complaint need not contain "detailed" factual allegations, its "factual

allegations must be enough to raise a right to relief above the speculative level."  *Ass'n of*

---

[4] Counts IV through VIII were all mislabeled as a result of Plaintiffs labeling two counts
as Count III. The Court has therefore relabeled those counts.

*Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965) (internal citations omitted); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief [.]").

In determining whether a plaintiff has set forth a "claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974), courts must accept the factual allegations in the complaint as true, *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965. This presumption, however, does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Therefore, to survive a motion to dismiss, a plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters*, 502 F.3d at 548 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65) (internal citations and quotations omitted).

Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of [a legal transgression], the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)) (internal citations omitted). In conducting its analysis, the Court may consider the pleadings, exhibits attached thereto, and documents referred to in the complaint that are central to the plaintiff's claims.

6

*Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999).   Here, the Court has

considered documents relating to the mortgage and foreclosure which are referenced in

the Complaint and are central to Plaintiffs' claims

### III.   ANALYSIS

Four of Plaintiffs' claims appear to relate to the validity of the foreclosure sale.

The Court groups these claims – Counts I, II, IV, and V – together, addressing them as

challenges to the foreclosure by advertisement in Section III.A below.   The Court then

analyzes the remaining four counts.

**A.   Plaintiffs Cannot Challenge the Foreclosure Sale because the Property was Properly Foreclosed, the Redemption Period has Expired, and All Rights Have Vested in Non-Party U.S. Bank.**

In Michigan, statutory law governs foreclosure sales by advertisement.   *Rainey v.*

*U.S. Bank, N.A*, No. 11-12520, 2011 U.S. Dist. LEXIS 123347, at *12 (E.D. Mich. Oct.

25, 2011) (Lawson, J.) (citing *Senters v. Ottawa Sav. Bank, FSB*, 443 Mich. 45, 50, 503

N.W.2d 639, 641 (1993)).   Thus, "[o]nce the mortgagee elects to foreclose a mortgage by

this method, the statute governs the" entire process.   *Id.* (citing *Senters*, 443 Mich. at 50,

503 N.W.2d at 641 (citing Mich. Comp. Laws § 600.3201, *et seq.*)).   Mortgagors may

redeem the foreclosed property within six months of a sheriff's sale.   Mich. Comp. Laws

§ 600.3240(8).   If no redemption is made, the sheriff's deed "become[s] operative, and []

vest[s] in the grantee named therein . . . all the right, title, and interest [] the mortgagor

had[.]"   *Id.* § 600.3236.

In *Piotrowski v. State Land Office Board*, the Michigan Supreme Court held that

mortgagors lose "all their right, title, and interest in and to the property at the expiration

of their right of redemption." 302 Mich. 179, 186, 4 N.W.2d 514, 516 (1942). This rule of law – holding that absolute title vests in the purchaser at the foreclosure sale upon expiration of the redemption period – has been applied consistently "to bar former owners from making any claims with respect to the foreclosed property after the end of the redemption period." *Hall v. Green Tree Servicing, L.L.C.*, No. 12-11811, 2012 U.S. Dist. LEXIS 85955, at *8-9 (E.D. Mich. June 21, 2012) (Edmunds, J.) (collecting cases). It is this rule that Defendant cites in support of their position that Plaintiffs lack standing to challenge the foreclosure sale.

There is, however, one important caveat to the general rule described above. Once a foreclosure sale has taken place and the redemption period has run, "a strong showing of fraud or irregularity can undo the sale." *See, e.g.*, *Brezzell v. Bank of America, N.A.*, No. 11-11476, 2011 U.S. Dist. LEXIS 74291, at *11 (E.D. Mich. July 11, 2011) (Edmunds, J.) (citing *Overton v. Mortgage Elec. Registration Sys.*, No. 284950, 2009 Mich. App. LEXIS 1209, at *1 (Mich. Ct. App. May 28, 2009) (per curiam)). Notably, the purported fraud or irregularity must relate to the foreclosure proceedings. *Pettey v. CitiMortgage, Inc.*, No. 11-13779, 2012 U.S. Dist. LEXIS 117932, at *16 (E.D. Mich. Aug. 21, 2012) (Lawson, J.) (citing *Reid v. Rylander*, 270 Mich. 263, 267, 258 N.W. 630, 631 (1935) (holding that only the foreclosure procedure may be challenged after a sale) and *Freeman v. Wozniak*, 241 Mich. App. 633, 636-38, 617 N.W.2d 46, 49 (2000) (reversal of sheriff's sale improper without fraud, accident, or mistake in foreclosure proceedings).

8

Because the redemption period has expired in this case, Plaintiffs must make a plausible showing of fraud or irregularity to state a claim for the relief they seek, which includes an order from the Court "tolling [] the statutory redemption period." (Compl. 14.) Plaintiffs have standing to assert this. However, as discussed below, Plaintiffs have not alleged conduct by Defendant that merits the Court tolling the limitations period or setting aside the completed foreclosure sale. In other words, Plaintiffs have not alleged the existence of a fraud or irregularity sufficient to set aside the sale. With these principles in mind, the Court addresses the issues of irregularity and fraud in turn.

**1.    *Plaintiffs have not shown an irregularity in the foreclosure necessary to set aside the foreclosure sale.***

   a.    *Count I, which alleges a failure to comply with statutory loan modification procedures, does not amount to an irregularity sufficient to set aside the foreclosure sale or to award Plaintiffs the relief they seek*

In Count I, Plaintiffs allege that Defendant "failed or refused to provide Plaintiffs with a mediation and/or with the required notices and modification information and opportunities in violation of" Michigan Compiled Laws § 600.3205a. (Compl. ¶ 33.) Moreover, "[Defendant] . . . should have been prevented from commencing foreclosure until [it] complied with the Statute, but nonetheless illegally sold Plaintiffs' home[.]" (*Id.* ¶ 35.) As relief, Plaintiffs request "damages . . . [and] declaratory relief including an Order to restrain Defendants from evicting Plaintiffs or taking possession of the property." (*Id.* at 6.)

According to Plaintiffs, they may proceed with these claims despite the running of the redemption period because this violation renders the foreclosure invalid. However,

under Michigan law, "a defect in notice renders a foreclosure sale voidable" – not void *ab initio* – which allows courts to examine "whether any harm was caused by the defect" such that the mortgagor lost the "potential opportunity to preserve some or any portion of his interest in the property[.]" *Jackson Inv. Corp. v. Pittsfield Prod., Inc.*, 162 Mich. App. 750, 755, 756, 413 N.W.2d 99, 101 (1987).

Implicit in Plaintiffs' defective notice argument is the notion that the alleged defect is a sufficient irregularity to void the foreclosure sale. Plaintiffs are mistaken. *See, e.g.*, *Galati v. Wells Fargo Bank, N.A.*, No. 11-11487, 2011 U.S. Dist. LEXIS 126124, at *10-11 (E.D. Mich. Nov. 1, 2011) (Cohn, J.) (holding that failure to provide "notice of [the] right to request a modification meeting under Michigan Compiled Laws § 600.3205a(1)(b)" does not constitute a "sufficient irregularit[y] to void the foreclosure sale"); *Brezzell*, [5] No. 11-11476, 2011 U.S. Dist. LEXIS 74291*, at *15 ("Even if Defendants violated [Michigan Compiled Laws § 600.3205a], that is not enough to set aside the foreclosure sale."); *Nafso v. Wells Fargo Bank, N.A.*, No. 11-10478, 2011 U.S. Dist. LEXIS 44654, at *8-9 (E.D. Mich. Apr. 26, 2011) (Cohn, J.) (holding that failure to provide "notice of [the] right to request a modification meeting under Michigan Compiled Laws § 600.3205a(1)(b)" is "insufficient to set aside the foreclosure"). In both *Galati* and *Nafso*, the plaintiffs alleged that the defendants failed to provide the same notice at issue here. In both cases, plaintiffs' claims were dismissed because the redemption period expired and plaintiff "ha[d] not stated a claim for relief related to any

---

[5] Plaintiffs' counsel represented the plaintiff in *Brezzell* and the Court assumes that he read Judge Edmunds' opinion.

defect in the foreclosure proceedings." *Galati*, No. 11-11487, 2011 U.S. Dist. LEXIS 126124, at *12 (quoting *Nafso*, No. 11-10478, 2011 U.S. Dist. LEXIS 44654, at *9). The same result applies in the instant case.

With respect to the harm caused by Defendant's purported failure to comply with the loan modification statute, the Court notes that Plaintiffs have failed to allege that they were qualified for a modification. Moreover, Plaintiffs did not attempt to redeem the Property, did not request a stay of the foreclosure sale, and they did not file suit challenging the foreclosure until after the statutory redemption period expired. *Cf. Brezzell*, No. 11-11467, 2011 U.S. Dist. LEXIS 74291, *17 (listing these very same reasons as support for the conclusion that plaintiff failed to demonstrate harm incurred due to defendant's failure to provide Michigan Compiled Laws § 600.3205a(1)(b) notice); citing *Nafso*, No. 11-10478, 2011 U.S. Dist. LEXIS 44654, at *9 (same). Because Plaintiffs have not alleged facts indicating they were harmed, Plaintiffs have not "show[n] that [they are] entitled to relief." Fed. R. Civ. P. 8(a)(2).

Plaintiffs are also not entitled to the remedies they seek in the form of damages and declaratory relief. To the extent Defendant failed to comply with the loan modification statute by failing to provide notice to Plaintiffs, the statute contains an exclusive enforcement mechanism allowing the mortgagor to "request judicial foreclosure if the foreclosing party does not comply with the loan modification provisions." *Dingman v. OneWest Bank, FSB*,[6] 859 F. Supp. 2d 912, 922 (E.D. Mich.

---

[6] Plaintiffs' counsel represented the plaintiff in *Dingman* and the Court assumes that he read Judge Cohn's opinion.

2012) (citing Mich. Comp. Laws § 600.3205c(8)).   The statute's plain language "limits [Plaintiffs'] relief . . . [because] it does not allow [] borrowers to avoid foreclosure altogether or set aside a completed foreclosure[,]" *Adams v. Wells Fargo Bank, N.A.*, No. 11-10150, 2011 U.S. Dist. LEXIS 90226, at *12 (E.D. Mich. Aug. 10, 2011) (Battani, J.), nor does it "give a plaintiff a cause of action for damages," *Dingman*, 859 F. Supp. 2d at 922.   Thus, in addition to failing to plead facts authorizing the Court to set aside the foreclosure on the grounds of an irregularity, Plaintiffs have failed to state a claim for damages.   Counts I is therefore dismissed with prejudice.

> b.   *The allegations in Count II do not constitute an irregularity in connection with the foreclosure proceedings and thus fail to state a claim.*

In Count II, Plaintiffs allege that Defendant violated Michigan Compiled Laws § 600.3204(4)(a), which provides that foreclosure proceedings may not be commenced to foreclose a  property claimed as a principal residence under the Michigan homestead tax exemption if the § 600.3205a notice has not been mailed to the mortgagor. (Compl. ¶¶ 37-38.)  As relief for the alleged violation, Plaintiffs request "damages . . . [and] declaratory relief including an Order to restrain Defendants from evicting Plaintiffs or taking possession of the property."  (*Id.* at 8.)

Michigan Compiled Laws § 600.3204(4) "is a statutory prohibition on foreclosure by advertisement where a lender does not take the required steps to negotiate a loan modification."  *Mitan v. Fed'l Home Loan Mortgage Corp.*, No 12-1169, at 7 (6th Cir. Dec. 12, 2012) (slip op.).  Because one of the required steps involves sending the notice required by Michigan Compiled Laws § 600.3205a, the failure to comply with this

requirement is a structural defect.  *Id.*; Mich. Comp. Laws § 600.3204(4)(a) ("A party shall not commence proceedings . . . to foreclose a mortgage of property claimed as a principal residence . . . if . . . [n]otice has not been mailed to the mortgagor as required by section 3205a.").  If Defendant violated this provision, the foreclosure would be void *ab initio* because "a structural defect that goes to the very heart of defendant's ability to foreclose by advertisement in the first instance."  *Davenport v. HSBC Bank USA*, 275 Mich. App. 344, 347, 739 N.W.2d 383, 384 (2007).  Importantly, this statute only applies if the foreclosed property is "claimed as a principal residence" and classified as a property benefitting from a homestead tax exemption.  Mich. Comp. Laws § 600.3204(4).

Plaintiffs admit that at the time the property was foreclosed, it was designated as non-homestead.  (Compl. ¶ 11.)  Acknowledging that the statutory notice requirement in this section only applies to homestead properties, Plaintiffs assert that the erroneous non-homestead designation constitutes an irregularity permitting the Court to extend the statutory redemption period.  This is not so.  As mentioned previously, to void a foreclosure by advertisement, the irregularity must relate to the foreclosure proceedings.  *Pettey*, No. 11-13779, 2012 U.S. Dist. LEXIS 117932, at *16 (citing *Reid*, 270 Mich. at 267, 258 N.W. at 631 (holding that only the foreclosure procedure may be challenged after a sale) and *Freeman*, 241 Mich. App. at 636-38, 617 N.W.2d at 49 (reversal of sheriff's sale improper without fraud, accident, or mistake in foreclosure proceedings). The classification of a property as homestead or non-homestead is not connected to the foreclosure proceeding.  As such, Count II is dismissed with prejudice.

    c.    *Plaintiffs' allegations of a deceptive act and/or unfair practice do not state a claim upon which relief may be granted and therefore cannot constitute an irregularity sufficient to set aside the foreclosure sale.*

In Count V, entitled "Deceptive Act and/or Unfair Practice," Plaintiffs allege that unspecified "affidavits and other documents may have been signed by persons who [lacked] personal knowledge" and "may have been signed outside the presence of a notary public . . . [in a process] known as 'robo-signing.'" (Compl. ¶¶ 61-62.) These purported "procedural defects[,]" Plaintiffs contend, "may constitute a deceptive act and/or an unfair practice or otherwise violate state laws." (*Id.* ¶¶ 60, 63.) Such speculative allegations do not suffice to state a claim.

First, the Complaint "states only that documents 'may' have been signed contrary to state law and that such practices 'may' constitute a deceptive act." *Dingman*, 859 F. Supp. 2d at 922. Plaintiffs' allegations are virtually identical to those made in *Block v. BAC Home Loans Servicing, L.P.*, No. 11-11181, 2012 U.S. Dist. LEXIS 78566, at *3, *10 (E.D. Mich. June 6, 2012) (Duggan, J.), where the Court held that "Plaintiffs' vague and speculative assertions of what has been labeled as 'robo-signing' are insufficient to state a plausible claim of fraud or irregularity."

Second, Plaintiffs do not cite which law Defendant allegedly violated and, even though represented by the same counsel as the plaintiff in *Dingman*, apparently fail to recognize that "Michigan common law has no independent cause of action for a 'deceptive act or unfair trade practice[].'" 859 F. Supp. 2d at 921. When faced with similar allegations, courts have construed them "as arising under the Michigan Consumer Protection Act ("MCPA")." *See, e.g., id.; Sembly v. U.S. Bank, N.A.*, No. 11-12322, 2012

14

U.S. Dist. LEXIS 1440, at *15 (E.D. Mich. Jan. 6, 2012) (Rosen, C.J.). Without delving into the mechanics of the MCPA too deeply, "[b]oth Michigan courts and federal courts applying Michigan law have consistently held that the MCPA does not apply to claims arising out of residential mortgage transactions." *Sembly*, No. 11-12322, 2012 U.S. Dist. LEXIS 1440, at *15-16 (citation omitted). Because Count V does not state a plausible claim, the Court dismisses it with prejudice.

**2.     *Plaintiffs have not shown any fraud in connection with the foreclosure so as to set aside the foreclosure sale.***

In Count IV, "Plaintiffs allege intentional misrepresentation and fraud[.]" (Compl. ¶ 50.) As explained more fully below, the Court finds that Plaintiffs have failed to state a plausible claim for relief in light of the heightened pleading standards of Federal Rule of Civil Procedure 9(b). As such, the fraud allegations do not warrant setting the foreclosure aside.

To prevail on a fraud claim in Michigan, a plaintiff is required to prove: (1) that the defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. *Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336, 247 N.W.2d 813, 816 (1976) (internal quotations omitted). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy this standard, a claimant must "(1) specify the

15

statements the plaintiff contents were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent." *Louisiana School Employees' Ret. Sys. v. Ernst & Young, L.L.P.*, 662 F.3d 471, 478 (6th Cir. 2010).

Liberally construing the Complaint, it is evident that Plaintiffs fail to state an actionable fraud claim. Plaintiffs claim that "Defendant[] repeatedly made representations and/or omissions to Plaintiffs regarding the nature of the mortgage, and the status of the loan modification, including but not limited to statements and assurances that they were reviewing Plaintiffs for a loan modification program and advised them not to worry about the foreclosure or sheriff's sale, omitting the fact that the sale was not being delayed during these negotiations." (Compl. ¶ 51.) Defendant argues that "[t]he only purported misrepresentation identified in the Complaint is an alleged statement from an unidentified representative of BANA 'assur[ing] Plaintiffs that there would be no problem' with the foreclosure sale scheduled for June 9, 2011." (Def.'s Br. in Supp. 13 (citing Compl. ¶ 27).) Defendant points out that the Sheriff's Deed proves that no foreclosure sale occurred on June 9, 2011. (*Id.*)

In Response, Plaintiffs suggest that additional misrepresentations were alleged in the Complaint "regarding excessive charges and misclassification of the property." (Pls.' Br. in Resp. 18.) Plaintiffs, however, state in the Complaint that that "the subject property was classified as 'non-homestead' due to the fact that the sheriff's sale was never rescinded." (Compl. ¶ 11.) Plaintiffs later acknowledged that the sale was rescinded. (Pls.' Br. in Resp. 10.) Elsewhere, Plaintiffs' indicate that the Property was

16

erroneously classified as "non-homestead" and this error was initially caused by LaSalle. (*Id.* at 8.)  As pled, Plaintiffs do not allege a material representation that was false.  That the Property was allegedly misclassified and caused Plaintiffs' taxes to increase does not amount to a material misrepresentation because the taxes were based solely on the property classification.

As in *Dingman*, 859 F. Supp. 2d at 919, "[t]he gravamen of [] plaintiffs' fraud claim[] is that [Defendant] assured plaintiffs that" they were being reviewed for a loan modification "and advised them not to worry about the foreclosure or sheriff's sale," (Compl. ¶ 51; *see also id.*, ¶ 55 ("Defendant['s] behavior, including but not limited to reassuring Plaintiffs that a sheriff's sale would be averted while simultaneously planning and executing such [a] sale . . . is fraudulent and illegal.").)  These claims are barred by the Michigan's statute of frauds, specifically Michigan Compiled Laws § 566.132(2), which provides, in pertinent part, "that an action cannot be brought against a financial institution to enforce any 'financial accommodation,' unless the promise or commitment 'is in writing and signed with an authorized signature by the financial institution.'" *Dingman*, 859 F. Supp. 2d at 919 (dismissing fraud claims predicated on substantially similar factual allegations as made in the instant case).  The Sixth Circuit recently explained that "the Michigan Court of Appeals has clearly interpreted § 566.132(2) to include promises to delay foreclosure sales, holding that 'an agreement to delay a foreclosure sale is an agreement to make a financial accommodation.'" *Williams v. Pledged Property II, L.L.C.*, No. 12-1056, at 7 (6th Cir. Dec. 12, 2012) (slip op.) (internal quotation marks and citation omitted).  Thus, this Court "cannot enforce" the oral

17

assurances allegedly made by Defendant "without evidence that would satisfy the Statute of Frauds." *Id.* at 8.

For the above-stated reasons, Count IV of Plaintiffs' Complaint is dismissed with prejudice for failure to state a claim.

## B. The Remaining Counts Fail to State Plausible Claims Upon Which Relief May Be Granted.

Defendant argues that Plaintiffs have not stated a claim for the remaining causes of action, which include the following counts: Quiet Title; Equitable, Declaratory, and Injunctive Relief; Negligence; and violations of the RESPA.

### 1. *Plaintiff Concedes that Counts VII (Quiet Title) and VIII (Equitable, Declaratory, and Injunctive Relief) Fail to State a Claim.*

In Response, Plaintiffs agree to dismiss Count VII and Count VIII for failure to state a claim.  (Pls.' Br. in Resp. 11.)  Therefore, the Court dismisses Counts VII and VIII with prejudice.

### 2. *Negligence*

Defendant argues that Plaintiffs' negligence claim fails because Plaintiffs have not alleged a prima facie case.  To state a negligence claim, a plaintiff must allege four elements: duty, breach, causation, and damages.  *Lelito v. Monroe*, 273 Mich. App. 416, 418-19, 729 N.W.2d 564, 566 (2006).  "The Michigan Supreme Court has held that in 'tort actions based on a contract,'" such as the case here, "'courts should use a 'separate and distinct mode of analysis.'"  *Galati*, No. 11-11487, 2011 U.S. Dist. LEXIS 126124, at *21-22 (quoting *Fultz v. Union-Commerce Assoc.*, 470 Mich. 460, 467, 683 N.W.2d 587, 592 (2004)).  In this analysis, "the threshold question is whether the defendant owed

18

a duty to the plaintiff that is separate and distinct from the defendant's contractual

obligations.  If no independent duty exists, no tort action based on a contract will lie."

*Id.*; *see also Ulrich v. Fed'l Land Bank of St. Paul*, 192 Mich. App. 194, 198, 480

N.W.2d 910, 912 (1991) ("It has often been stated that the sometimes hazy distinction

between contract and tort actions is made by applying the following rule: if a relation

exists that would give rise to a legal duty without enforcing the contract promise itself,

the tort action will lie, otherwise it will not.") (citations omitted).

Here, Plaintiffs have not alleged that Defendant owed them a duty separate and

distinct from the contractual obligations.  Plaintiffs allege that "Defendant[] had a duty to

refrain from premature, wrongful, and/or illegal foreclosure and sheriff's sale and

perform duties as a lender [and] servicer [] without carelessness, incompetence or

indifference and at a level commensurate with industry standards."  (Compl. ¶ 41.)  These

allegations simply establish a duty that arose, if at all, pursuant to the note, mortgage, and

modification agreement.  (Def.'s Br. in Supp. 11.)  The allegations are similar to those

made in *Galati*, where the court rejected that the following allegations created a duty on

the part of the defendant: "The Defendant, as Mortgage Servicer, owes the Plaintiff, as

Borrower, a duty to comply with relevant industry standards for the lending industry, as

well as compliance with local, state and federal regulations."  *Galati*, No. 11-11487, 2011

U.S. Dist. LEXIS 126124, at *22-23 (citing *Ulrich*, 192 Mich. App. at 198-99, 480

N.W.2d at 912 (holding that a lending institution did not owe a borrower a duty of care

with respect to determining the borrower's eligibility for a loan)).

Plaintiffs seem to acknowledge that Defendant "may not have had a duty to determine if Plaintiffs' property could have been claimed under the homestead exemption," however, they contend – raising the argument for the first time in Response – that Defendant had a "separate and distinct duty" to help Plaintiffs mitigate the harm from the erroneous non-homestead classification because it had notice of the problem. (Pls.' Br. in Resp. 17.)  Under Plaintiff's theory, Defendant's knowledge of the erroneous classification gave rise to a fiduciary relationship which in turn created a duty to stop deducting funds from Plaintiffs' escrow for the tax overage and a concomitant duty to correct the error.  (*Id.* at 16.)

Under Michigan law, "a fiduciary relationship arises from the reposing of faith, confidence, and trust and the reliance of one on the judgment and advice of another." *Teadt v. Lutheran Church Mo. Synod*, 237 Mich. App. 567, 580-81, 603 N.W.2d 816, 823 (1999).  "[T]here is generally no fiduciary relationship between a mortgagor and a mortgagee."  *Coyer v. HSBC Mortgage Servs., Inc.*, No. 11-2378, slip op. at *4 (6th Cir. Nov. 13, 2012) (per curiam) (citing *Sallee v. Fort Knox Nat'l Bank, N.A. (In re Sallee)*, 286 F.3d 878, 893 (6th Cir. 2002)).  In fact, Michigan courts are "reluctant to extend the cause of action for breach of fiduciary relationship beyond the traditional context[s]" of "trustees to beneficiaries, guardians to wards, attorney to client, and doctors to patients." *Bero Motors, Inc. v. General Motors Corp.*, No. 224190, 2001 Mich. App. LEXIS 2029, at *12 (Mich. Ct. App. Oct. 2, 2001) (per curiam) (internal citations omitted).

As pled, the facts do not establish any sort of special or fiduciary relationship because only Plaintiffs had the authority to change the Property's tax designation.  Mich.

20

Comp. Laws § 211.7cc(2) (to claim the homestead exemption, the owner must file an affidavit stating "that the property is owned and occupied as a principal residence by that owner of the property").  Moreover, in light of Michigan's liberal procedures for both applying for a homestead exemption for those who fail to apply in the first instance and for appealing the denial of homestead exemptions,[7] the Court does not find that Michigan law imposes a duty upon Defendant.  In creating the liberal tax appeal procedure, Michigan law intentionally avoided creating liability for failure to assist a property owner in claiming the homestead exemption.  For instance, when property is sold through a closing agent, the law imposes an obligation on that agent to assist the buyer in claiming the homestead exemption.  Mich. Comp. Laws § 211.7cc(18).  Even so, the law states that the requirement "does not create a cause of action at law or in equity" against a closing agent who fails to assist the buyer.  *Id.*  A closing agent who is required by law to help the buyer claim the homestead exemption does not incur liability for failing to do so because the buyer may simply "appeal to the department of treasury."  *Id.*  Because Defendant was not obligated to assist Plaintiffs in claiming the exemption in the first instance, it is difficult to imagine that its subsequent failure to assist Plaintiffs correct the classification could form the basis of a fiduciary relationship, particularly when Defendants had no authority to change the designation.

        Because Plaintiffs have not adequately pled the existence of a duty, they have not and cannot state a claim for negligence. As such, Count III is dismissed with prejudice.

---

[7] Homeowners who mistakenly fail to claim the homestead exemption can appeal to the local tax authority for reimbursement of any tax overpayment, plus interest, for up to three prior years.  Mich. Comp. Laws § 211.7cc(19), (21).

3.      *RESPA Violations*

Plaintiffs allege that they "sent qualified written requests [("QWR")] to Defendant[] under 12 U.S.C. § 2601 *et seq.*, however Defendant[] failed to respon[d] as required by law[.]" (Compl. ¶ 29.) Plaintiffs go on to list the various ways Defendant violated the RESPA, specifically citing various provisions in 12 U.S.C. § 2605(e). (Compl. ¶¶ 67(a)-(d).) Because violations of 12 U.S.C. § 2605(e) give rise to damages pursuant to 12 U.S.C. § 2605(f), the Complaint states that "[a]s a result of these alleged violations, the Plaintiff [*sic*] suffered damages." (*Id.* ¶ 68.) In Response, Plaintiffs expand upon the bare assertion of damages in Response, claiming that "Defendant['s] wrongful accounting has caused Plaintiffs damages including excessive fees, the potential loss of their home, inaccurate and damaged credit, exposure to potentially higher interest and insurance rates, and attorney fees and costs." (*Id.* at 20.)

Plaintiffs have failed to state a claim under the RESPA. First, responses to QWRs are due within "60 days (excluding legal public holidays, Saturdays and Sundays)" of receipt by the servicer. 12 U.S.C. § 2605(e)(2). Defendant allegedly received the QWRs on May 3, 2012 (the "first QWR") and May 14, 2012 (the "second QWR").[8] (Pls.' Br. in Resp. 19.) Plaintiffs received a response on July 18, 2011, but contend it was untimely. (Pls.' Supplemental Resp. 1.) This contention is erroneous. The response, written on July 18, fell within the sixty business day window required by the statute. Sixty business days from the first QWR was July 30 and the corresponding date for the second QWR

---

[8] The two QWRs submitted were identical and did not constitute two separate requests.

was August 8. [9]  Interestingly, Plaintiffs filed this lawsuit on June 6, 2012, nearly two

months before the response to the first QWR was required.  In other words, at the time

this action was filed, Defendant could not have violated the RESPA.

Second, Plaintiffs have not identified any defects in the July 18 response that

would entitle them to the damages they seek.  While Plaintiffs may believe Defendant

should have provided more information, Defendant was only required to respond to

requests for "information relating to the servicing of [Plaintiff's] loan."  12 U.S.C. §

2605(e)(1)(A).  The response appears to comply with the statutory requirements.  (July

18, 2012 Letter, Pls.' Supplemental Resp.)  Third, and lastly, even assuming the response

was inadequate, Plaintiffs have not explained how the purported RESPA violation caused

the damages they seek.  *See Mekani v. Homecomings Fin., L.L.C.*, 752 F. Supp. 2d 785,

795-96 (noting that plaintiffs must establish causation between the RESPA violation and

the damages claimed).  Plaintiffs admit that they were not paying the full amount claimed

to be owed under the mortgage and note, and thus admit that they had defaulted.  (Compl.

¶ 17.)  The default – not the purported RESPA violation – caused most of the damages

claimed by Plaintiffs.  Moreover, the purported RESPA violation did not cause what

Plaintiffs' refer to as excessive fees as these existed prior to Plaintiffs sending a QWR

and Defendant had no control over the tax designation assigned to the Property.

Plaintiffs have not stated a plausible claim for relief under the RESPA. The Court

therefore dismisses Count VI with prejudice.

---

[9] Memorial Day (May 28) and Independence Day (July 4) are federal legal holidays and
are thus not counted for purposes of the sixty days.

## IV.   CONCLUSION AND ORDER

For the reasons set forth above, the Court concludes that Plaintiffs' Complaint fails to state a claim for relief for any of the eight counts included therein.

Accordingly,

**IT IS ORDERED THAT**, Defendant's Motion to Dismiss is **GRANTED** and Plaintiffs' claims are **DISMISSED WITH PREJUDICE**.


Date:  December 18, 2012                    s/PATRICK J. DUGGAN
                                           UNITED STATES DISTRICT JUDGE

Copies to:
**Adam S. Alexander, Esq.**
**Brandon K. Buck, Esq.**